IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| CHRISTINA GARRETT, individually and on behalf of M.G., a minor, as his mother and natural guardian, <br><br> 6304 Clinton Way <br> Clinton, MD 20735 <br><br> PLAINTIFF, <br><br> v. <br><br> DELTA AIR LINES, INC., <br>     Serve: Corporation Service Company <br>     100 Shockoe Slip, Floor 2 <br>     Richmond, VA 23219 <br><br> DEFENDANT. | Case No. <br><br><br> JURY TRIAL REQUESTED |

## COMPLAINT

COMES NOW, the Plaintiff, Christina Garrett, on behalf of M.G., a minor, as his mother and natural guardian, by and through counsel, and for the Complaint herein, states as follows:

### JURISDICTIONAL ALLEGATIONS

1. Plaintiff Christina Garrett is a citizen of the State of Maryland and is the mother and natural guardian of M.G., a minor, who is also a citizen of the State of Maryland.

2. Delta Air Lines, Inc., ("Delta Air Lines"), is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Georgia.

3. Plaintiff brings her complaint under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

**COMMON ALLEGATIONS OF FACT**

4. Delta Air Lines regularly operates flights in and out of from Regan National Airport (DCA) in Arlington, Virginia and avails itself of the privileges and benefits of conducting business in the Commonwealth of Virginia.

5. On July 21, 2018, M.G., a minor, was traveling from Reagan National Airport (DCA) in Arlington, Virginia to Orlando International Airport (MCO) in Orlando, Florida, with a layover in Detroit, Michigan (DTW) with his mother, Christina Garrett, and siblings.

6. The Garrett family was traveling to Orlando to enjoy amusement parks for M.G.'s tenth birthday.

7. At the time they boarded the aircraft, M.G.'s wheelchair was checked at Reagan National Airport so that the wheelchair would arrive with M.G. as soon as he landed to Orlando, Florida.

8. M.G. suffers from cerebral palsy and is dependent on the use of a specialized wheelchair.

9. Delta Air Lines was aware that M.G. required a wheelchair.

10. Upon arrival to Orlando, Florida around 7:30 p.m., M.G.'s wheelchair was not off loaded with the other personal mobility devices.

11. M.G.'s wheelchair was not off loaded with the other baggage on the plane.

12. M.G.'s wheelchair is specially designed for his size, age, cerebral palsy side effects, and to enable his mobility and confidence.

13. After all of the passengers deplaned, a flight attendant had to pick M.G up and carry him off the plane. M.G. and his family were left at the gate—M.G. had no way of moving. The family remained at the gate for over an hour after their plane landed, immobilized.

14. Eventually an individual with a wheelchair brought M.G. and his family down to the Delta baggage office on the lower level near the baggage carousels.   The team at the Delta baggage office did not know how to handle the lost personal item and were extremely rude to M.G. and his mother.  The Delta baggage team went so far as to attempt to close the office in order to shut M.G. and his family out without any solution to M.G.'s personal transportation needs.

15. In order to placate the family, the Delta baggage office told the Garretts to return to the airport on Sunday, July 22, 2018, to retrieve M.G.'s customized wheelchair.

16. Because M.G. was deprived of his wheelchair, he was prevented from being able to move freely. M.G. became immediately and increasingly anxious and upset and emotional.  Because of his severe disabilities, M.G. lost his ability to contain his bladder urinated on himself.

17. At approximately 2:00 a.m. on July 22, 2018, M.G. and his family left the airport without any personal transportation for M.G. and in a normal cab and not in a handicapped van.  M.G. and his family had no information about his lost customized wheelchair.

18. As requested, Christina Garrett and M.G. returned to the airport the next day to retrieve M.G.'s customized wheelchair.  Upon their arrival no one at the Delta baggage team had any information about M.G.'s customized chair.  After several hours of waiting at the Delta baggage facility M.G. and his mom were informed that M.G.'s customized wheelchair had been located, but it was too damaged to be used.

19. M.G. received a loaner wheelchair from Scoot Around for the remainder of the trip. The chair was not designed for his mobility and prevented him from moving about as he had intended, visiting the amusement parks as intended, and forced Christina Garrett to incur unnecessary expenses. The loaner wheelchair also caused an injury to his foot.

20. Since being deprived of his wheelchair, M.G. has suffered from post-traumatic stress from this incident, increased and sustained anxiety, particularly when needing to separate from his chair, resulting in a regressed toileting behaviors and poor school performance.

## COUNT I
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

21. Plaintiff reavers and incorporates by reference the previous paragraphs of this Complaint as if fully re-written here.

22. At all times relevant, Delta Air Lines, as an air carrier, had a duty, pursuant to 14 C.F.R. § 382, governing airlines for the accommodation of disabled individuals pursuant to the Air Carrier Access Act (ACAA), 49 U.S.C. §§ 41702, 47105, and 41712, to ensure that individuals with a disability are to be provided with assistance in embarking, deplaning, and in making flight connections and transportation between gates. 14 C.F.R. § 382.39(a).

23. At all times relevant, Delta Air Lines, as a common carrier, had an obligation to exercise the highest degree of care for its passengers' safety.

24. Delta Air Lines failed to comply with this requirement by depriving M.G., a minor, of his specialized wheelchair and then repeatedly failing to provide him adequate wheelchair assistance.

25. Delta Air Lines knew or should have known that depriving a child with disabilities from his specialized wheelchair was likely to cause physical and emotional injuries.

26. M.G. suffered physical and emotional injuries as a result of Delta Air Lines' failure to provide assistance in deplaning the aircraft.

27. M.G. is within the class intended to be protected by 14 C.F.R § 382 in that he is an individual with disabilities.

28. 14 C.F.R. § 382 was intended to protect disabled Americans from suffering injuries while enplaning, deplaning, and in making flight connections.

29. Delta Air Lines' violation of 14 C.F. R. § 382 in failure to provide assistance in enplaning, deplaning, and in making flight connections was the proximate cause of M.G.'s injuries.

30. As a direct and proximate result of the deprivation of his wheelchair, M.G. suffered from extreme distress and anxiety that physically manifested when he urinated on himself. M.G.'s incontinence was directly caused by his severe anxiety and deprivation of his wheelchair by Delta Air Lines.

31. M.G. also injured his foot on the loaner wheelchair provided to him as a result of Delta's negligence.

32. M.G. continues to suffer from post-traumatic stress, anxiety, and has regressed in his toileting habits as a direct and proximate result of Delta Air Lines conduct.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

33. Plaintiffs reallege and reaver the foregoing paragraphs as if fully rewritten here.

34. At all times relevant, Defendant Delta Air Lines engaged in extreme and outrageous conduct in the following ways, including but not limited to:

   a. Withholding M.G.'s wheelchair from him after M.G. and his family landed;

   b. Requiring M.G. and his mother to return to the Orlando Airport when there was no realistic likelihood that M.G.'s wheelchair had been found;

   c. Intentionally damaging M.G.'s customized wheelchair; and

    d.  Failing to promptly attempt to return M.G.'s wheelchair to either M.G. or his mother.

35. At all times relevant, Defendant Delta Airline's conduct was recklessly indifferent to the likelihood that its actions would cause severe emotional distress to the Plaintiffs.

36. At all times relevant, the Defendant's conduct in fact caused severe emotional distress to the Plaintiffs.

37. M.G. was intentionally deprived of his customized wheelchair causing him pain, discomfort, the inability to get around and severe emotional distress.

## COUNT III
## CONVERSION

38. Plaintiffs reallege and reaver the foregoing paragraphs as if fully rewritten here.

39. Delta Air Lines failed to promptly return M.G.'s wheelchair after his flight landed.

40. Delta Air Lines willfully and without lawful justification appropriated M.G.'s property as Delta Airline's sole property without the consent of M.G. or his parent or legal guardian.

## COUNT IV
## LOSS OF CONSORTIUM

41. Plaintiffs reallege and reaver the foregoing paragraphs as if fully rewritten here.

42. As a direct and proximate result of the conduct of Delta Air Lines, Plaintiff Christina Garrett suffered the loss of services, care, comfort and joy of her son, Plaintiff, M.G.

## COUNT V
## PUNITIVE DAMAGES

43. Plaintiffs reallege and reaver the foregoing paragraphs as if fully rewritten here.

44. At all times and places mentioned herein, Delta Air Lines so recklessly handled and transported M.G.'s customized wheelchair, so as to amount to willful and wanton disregard for

the safety, health, welfare of M.G., and others in his position whom Delta Air Lines , knew or reasonably should have anticipated, would suffer harm if they had been deprived of their personal mobility devices.

45. Delta Air Lines was grossly, wantonly and willful in its failure to properly handle and transport M.G.'s customized wheelchair and in failing to provide for the safety of those members of the public using their airline.  In these regards, Defendant's conduct is nothing less than conduct, which is despicable, malicious and fraudulent, and Defendant is responsible for punitive and exemplary damages.

46. The aforementioned negligent, reckless and careless acts and omissions of the Delta Air Lines caused the incident described herein.  As a direct and proximate result of Defendant's conduct, the Plaintiff was placed in peril and severely injured.  Therefore, the Plaintiffs seek punitive damages in an amount calculated to deter Defendants' placing of profit above human life.

WHEREFORE, Plaintiff Christina Garrett, on behalf of M.G., a minor as his mother and natural guardian, demands judgment against the Defendant, Delta Air Lines, for compensatory damages in excess of $75,000.00, costs, and interests as allowed by law and for such other relief as the Court deems just, and demands a trial by jury on all issues so triable as a matter of right. Respectfully submitted this the 2nd day of December, 2019.

/s/ Amanda C. Dure  
Amanda C. Dure  
Virginia State Bar No. 85394  
PANGIA LAW GROUP  
1717 N Street NW  
Washington, DC 20036  
(202) 955-6153 (telephone)  
(202) 393-1725  
adure@pangialaw.com